## WEAVER ET AL *v.* PARAGON CONSTRUCTION COMPANY, INC. ET AL.

[No. 172, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Alfred J. O'Ferrall, Jr.,* with whom was *Philip E. Wolfe* on the brief, for the appellants.

*Robert W. Beall* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Appellants in this case filed a bill of complaint in the Circuit Court for Montgomery County, asking the court to pass a decree directing the appellee, Paragon Construction Company, Inc., holder of a note secured by a deed of trust, to surrender that note to the complainants, and directing the trustees in the deed of trust to deliver to the complainants a release of that trust. The court was also asked to pass a decree declaring the deed of trust to be null and void, and not to constitute a cloud upon the title of the land vested in Evelyn K. Morgan, one of the complainants. The defendants answered, testimony was taken, and the court passed a decree dismissing the bill of complaint. From this decree the complainants appealed here.

The facts in the case are quite complicated. They are stated in the following words by the chancellor:

"On December 11, 1947, Charles A. Weaver signed a contract to buy 41½ acres of land from Josiah Carr for $47,000.00. The land was in tracts of 27 acres and 14½ acres. The seller was to take back a deed of trust on the 27 acre tract and on one acre in the 14½ acre tract, leaving 13½ acres to be conveyed clear to the purchaser. The sale was not immediately consummated, apparently the seller refused to go through with it. However, it appears that Weaver induced Dorothy Lee Ward, a patient of Weaver's to promise to furnish the amount of money required as a down payment. Weaver brought Mrs. Ward to the office of the attorney representing him. There she made the statement that she had to have further security for her money. Weaver had no money to put in the transaction. On May 20, 1949, Weaver and wife entered into a written agreement with Mrs. Ward. Mrs. Ward by this agreement was to have seven acres in the second tract deeded to her, she was to put up $16,250.00, the

Weavers agreed to promptly have the seven acres subdivided into lots, blocks and streets, costs to be borne equally by the parties, and the Weavers agreed to purchase within two years all of the lots at $1,500.00 per lot. And it was further agreed that the Weavers would execute a mortgage on the remaining 7½ acres (6½ acres actually being the correct number of acres) in the second tract, to secure to Mrs. Ward the $16,250.00, payable on or before two years, and 'that said mortgage shall be additional security for the money paid under this contract and all payments for sales of lots hereinbefore referred to out of the first mentioned Seven (7) acres of land, which is to be deeded to Mrs. Ward, shall be credited to said mortgage, and that under the terms of said mortgage, the sum of $750.00 shall be sufficient to release any lot from the effects of the mortgage.'

"The transaction was completed on June 7, 1949. Mrs. Ward put up $16,250.00 as the required down payment. Out of this payment Weaver got $1,900.00 and $277.75, his lawyer $1,000.00, and a judgment against Weaver and Court costs in two cases were paid.

"On this day, Carr conveyed the 41½ acres to Weaver and wife, Carr took a mortgage on 27 acres and one acre for the balance of the purchase price, Weaver and wife conveyed 7 acres to Ward, and executed a deed of trust (not a mortgage as called for in the agreement) on the remaining 6½ acres to secure a promissory note in the amount of $16,250.00 payable to the order of Mrs. Ward on or before two years after date, with interest at 5% per annum, payable semi-annually. (There is no claim that the Weavers did not know and fully understand that they were giving a deed of trust instead of

a mortgage. Their lawyer drew it.) Weaver never had the seven acres subdivided, although he sent her a telegram to Paris, 'In view of your decision to hold necessary you send as per agreement half of survey bulldozing *now due* 3500 *civil engineer* calls immediate settlement.' Mrs. Ward was not foolish enough to send the $3500 but wrote to him about the matter. On November 10, 1949, he borrowed $900.00 from Mrs. Ward by representing that his wife was sick from a cancer.

"He never paid the taxes on any of the land, never subdivided, never bought the seven acres back, never paid Mrs. Ward anything on the note —in fact it appears that after the date of settlement on June 7, 1949, when he and his creditors received over $1900.00, that he lost interest in the property.

"Thereafter Mrs. Ward employed a real estate agent, Mr. Bieber, and he commenced negotiations with Mr. Finkelstein to sell the 13½ acres which were thought to be owned by Mrs. Ward, for $19,000.00. While Bieber, Finkelstein and his lawyer were at Mrs. Ward's home it was learned that Mrs. Ward did not own 13½ acres, but had a deed for seven acres and a promissory note for $16,250.00 secured by a deed of trust on the remaining 6½ acres. Mr. Finkelstein bought the seven acres and the deed of trust note, and it was endorsed, 'Pay to the order of David Finkelstein without recourse to me, Dorothy Lee Ward'. Thereafter the note was endorsed, 'Pay to the order of Paragon Construction Co., Inc., David Finkelstein'.

"On January 15, 1951, Weaver and wife, by deed, conveyed the 6½ acres covered by the deed of trust of $16,250.00 to one of the plaintiffs, Evelyn K. Morgan. Mrs. Morgan, who is experienced in real estate transactions, paid

Weaver $500.00, paid some taxes, amount not shown, and she says that she bought 6½ acres for the price just mentioned, and did not know whether there was a trust of judgment against it."

The appellants contend that at the time of the delivery of the deed of trust and the note, no cash consideration passed from Mrs. Ward to the grantors, that the note secured only a purported debt of $16,250.00 and no actual advance, that the delivery of the deed for the seven acres left nothing due or owing to Mrs. Ward, that the deed of trust and note represent no present or contemplated future advance from Mrs. Ward, and that the $16,250.00 was in payment for the seven acres.

It is apparent from the agreement of May 20, 1949, that the Weavers not only sold seven acres to Mrs. Ward for the $16,250.00, but that they were subsequently to have these acres subdivided and were to purchase from her within two years each or all of said lots for the sum of $1,500.00 a lot, and that the mortgage to be executed by them was additional security for the money paid under the contract, and all payments for sales of lots. This agreement was drawn by the attorney of the Weavers and it is somewhat obscure, but, according to the testimony of Mr. Weaver, Mrs. Ward, who was not represented by an attorney, refused to put up the $16,250.00 for the seven acres, but insisted on further security for her money. The whole transaction, therefore, was admittedly entered into at one time to secure the repayment to Mrs. Ward of the amount of money which she put up. The deed was one part of the transaction, and the deed of trust was another. Whether the deed should be considered as being in the nature of a mortgage between the Weavers and Mrs. Ward is not involved in the present case, nor do we have to decide the respective rights of the Weavers and Mrs. Ward, or whether the former are entitled to any accounting from Mrs. Ward of the proceeds of the sale of the respective properties, that is, those to which she has

title under the deed, and those against which she held the note secured by the deed of trust. Mrs. Ward is not a party to this case, but on the record, she had a good title, both to the deed and to the note.

The testimony of David A. Finkelstein, one of the defendants, who is also president of Paragon Construction Company, Inc., indicates that he knew that Mrs. Ward had only paid $16,250.00 for the land and for the deed of trust, but it is not shown whether or not he had even seen or knew of the written agreement of May 20, 1949. He purchased what Mrs. Ward held, which was the seven acres and the trust note on the other tract. So far as the record discloses, the appellee corporation was a *bona fide* purchaser for value, although we do not so decide, and we do not bar possible testimony in some other proceeding showing the contrary. The only contention made here by the appellants is that the deed of trust and the note are absolutely void, and this, on the face of the record, we cannot find. There is nothing before us which would justify us in holding that the trustees cannot foreclose the deed of trust, and there is nothing before us to justify us in holding that the Paragon Company cannot dispose of the seven acres which it has purchased. The decree will therefore have to be affirmed without prejudice to the rights of any of the parties to an accounting in an appropriate proceeding.

*Decree affirmed with costs.*